## FEDERAL POWER COMMISSION *v.* SIERRA PACIFIC POWER CO.

NO. 51.

Argued November 8, 1955.—Decided February 27, 1956.

*Howard E. Wahrenbrock* argued the cause for petitioner in No. 51. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Burger, Melvin Richter, Lionel Kestenbaum, Willard W. Gatchell, William J. Grove* and *Drexel D. Journey.*

*F. T. Searls* argued the cause for petitioner in No. 53. With him on the brief were *Robert H. Gerdes, Robert E. May* and *John C. Morrissey.*

*William C. Chanler* argued the cause and filed a brief for respondent.

Mr. Justice Harlan delivered the opinion of the Court.

This case presents questions under Title II of the Federal Power Act, 49 Stat. 847, 16 U. S. C. § 824 *et seq.,* which are in part similar to those we have decided today under the Natural Gas Act in *United Gas Pipe Line Co.* v. *Mobile Gas Service Corp., ante,* p. 332.

The pertinent provisions of the Federal Power Act, set forth in the margin,[1] are §§ 205 (c), (d), and (e), and 206 (a), which are substantially identical to §§ 4 (c),

[1] "SEC. 205. . . . (c) Under such rules and regulations as the Commission may prescribe, every public utility shall file with the Commission, within such time and in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.

"(d) Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

"(e) Whenever any such new schedule is filed the Commission shall have authority, either upon complaint or upon its own initiative without complaint, at once, and, if it so orders, without answer or formal pleading by the public utility, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the public utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded

(d), and (e), and 5 (a), respectively, of the Natural Gas Act.[2]

Respondent Sierra Pacific Power Company (Sierra) distributes electricity to consumers in northern Nevada and eastern California. For many years, it has purchased the major part of its electric power from petitioner Pacific Gas and Electric Company (PG&E), a "public utility" subject to regulation under Part II of the Federal Power Act. In 1947 Sierra, faced with increased postwar demands and consumer agitation for cheaper power, began

---

and an order made at the expiration of such five months, the proposed change of rate, charge, classification, or service shall go into effect at the end of such period, but in case of a proposed increased rate or charge, the Commission may by order require the interested public utility or public utilities to keep accurate account in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts are paid, and upon completion of the hearing and decision may by further order require such public utility or public utilities to refund, with interest, to the persons in whose behalf such amounts were paid, such portion of such increased rates or charges as by its decision shall be found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the public utility, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible." 49 Stat. 851–852, 16 U. S. C. § 824d.

"Sec. 206. (a) Whenever the Commission, after a hearing had upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order." 49 Stat. 852, 16 U. S. C. § 824e.

[2] Set forth as footnote 1 to the opinion in the *Mobile* case, *ante*, p. 334.

negotiating for power from other sources, including the Federal Bureau of Reclamation, which at the time had unused capacity at Shasta Dam. To forestall the potential competition, PG&E offered Sierra a 15-year contract for power at a special low rate, which offer Sierra finally accepted in June 1948. The contract was duly filed with the Federal Power Commission.

Early in 1953, when power from Shasta Dam was no longer available to Sierra, PG&E, without the consent of Sierra, filed with the Commission under § 205 (d) of the Federal Power Act a schedule purporting to increase its rate to Sierra by approximately 28%. The Commission, acting under § 205 (e), suspended the effective date of the new rate until September 6, 1953, and initiated a proceeding to determine its reasonableness. Sierra was permitted to intervene in the proceeding but its motion to reject the filing on the ground that PG&E could not thus unilaterally change the contract was denied. After completion of the hearings, the Commission, by order dated June 17, 1954, reaffirmed its refusal to reject the filing and held the new rate not to be "unjust, unreasonable, unduly discriminatory, or preferential." 7 P. U. R. 3d 256. On Sierra's petition for review, the Court of Appeals for the District of Columbia, holding that the contract rate could be changed only upon a finding by the Commission that it was unreasonable, set aside the Commission's order and remanded the case with instructions to the Commission to dismiss the § 205 (e) proceeding, but without prejudice to its instituting a new proceeding under § 206 (a) to determine the reasonableness of the contract rate. 96 U. S. App. D. C. 140, 223 F. 2d 605. We brought the case here because of the importance of the questions involved in the administration of the Federal Power Act. 349 U. S. 937.

The first question before us is whether PG&E's unilateral filing of the new rate under § 205 (d), and the

approval of the new rate by the Commission under § 205 (e), were effective to supersede PG&E's contract with Sierra. We think not. As the parties concede, the provisions of the Federal Power Act relevant to this question are in all material respects substantially identical to the equivalent provisions of the Natural Gas Act. In *United Gas Pipe Line Co. v. Mobile Gas Service Corp., supra,* decided today, we construed the Natural Gas Act as not authorizing unilateral contract changes, and that interpretation is equally applicable to the Federal Power Act. Accordingly, for the reasons there given, we conclude that neither PG&E's filing of the new rate nor the Commission's finding that the new rate was not unlawful was effective to change PG&E's contract with Sierra.

This case, however, raises a further question not present in the *Mobile* case. The Commission has undoubted power under § 206 (a) to prescribe a change in contract rates whenever it determines such rates to be unlawful. While this power is limited to prescribing the rate "to be thereafter observed" and thus can effect no change prior to the date of the order, the Commission's order here, if based on the necessary findings, could have been effective to prescribe the proposed rate as the rate to be in effect prospectively from the date of the order, June 17, 1954. If the proceedings here satisfied in substance the requirements of § 206 (a), it would seem immaterial that the investigation was begun as one into the reasonableness of the proposed rate rather than the existing contract rate.

The condition precedent to the Commission's exercise of its power under § 206 (a) is a finding that the existing rate is "unjust, unreasonable, unduly discriminatory or preferential." Petitioners contend that the Commission did in fact make such a finding. It was stipulated in the proceedings before the Commission that 5.5% was normally a reasonable rate of return for PG&E's operations,

that the contract rate would produce a 2.6% rate of return, and that the proposed rate would produce a 4.75% rate of return. The Commission concluded that the proposed rate was not unreasonably high because it provided no more than a fair return and was not unreasonably low because the 0.75% deficiency of its yield from the stipulated reasonable rate of return was not being made up on other sales and was justified in order to retain business the loss of which by PG&E would result in idle facilities. It also concluded that the proposed rate was not unduly discriminatory or preferential, despite substantial differences between it and the rates being charged other customers. While no further findings were necessary in view of the Commission's interpretation of the Act as permitting unilateral contract changes, the Commission went on to say:

> "However, we may point out that if a finding on the lawfulness of the 1948 contract rate were necessary or appropriate, on the record before us that finding would have to be that the 1948 rate is unreasonably low and therefore unlawful. For none of the evidence in this record warrants a finding that any rate would be reasonable that would produce a return of substantially less than the 4.75% resulting from the proposed rate, which is the minimum PG&E is willing to accept."

It is contended that by this statement the Commission in substance found that the existing contract rate was "unreasonable" and fixed the proposed rate as "the just and reasonable rate," thereby satisfying the requirements of § 206 (a).

But even accepting this statement as a finding of unreasonableness of the contract rate, the Commission's conclusion appears on its face to be based on an erroneous standard. In short, the Commission holds that the

contract rate is unreasonable solely because it yields less than a fair return on the net invested capital. But, while it may be that the Commission may not normally *impose* upon a public utility a rate which would produce less than a fair return, it does not follow that the public utility may not itself agree by contract to a rate affording less than a fair return or that, if it does so, it is entitled to be relieved of its improvident bargain. Cf. *Arkansas Natural Gas Co.* v. *Railroad Comm'n,* 261 U. S. 379. In such circumstances the sole concern of the Commission would seem to be whether the rate is so low as to adversely affect the public interest—as where it might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory. That the purpose of the power given the Commission by § 206 (a) is the protection of the public interest, as distinguished from the private interests of the utilities, is evidenced by the recital in § 201 of the Act that the scheme of regulation imposed "is necessary in the public interest." When § 206 (a) is read in the light of this purpose, it is clear that a contract may not be said to be either "unjust" or "unreasonable" simply because it is unprofitable to the public utility.

Whether under the facts of this case the contract rate is so low as to have an adverse effect on the public interest is of course a question to be determined in the first instance by the Commission. We shall therefore affirm the order of the Court of Appeals, with instructions to remand the case to the Federal Power Commission for such further proceedings, not inconsistent with this opinion, as the Commission may deem desirable.

*It is so ordered.*