WISCONSIN ELECTRIC POWER COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Cities of New London and Shawano, Wisconsin, Intervenors.

The CITIES OF NEW LONDON AND SHAWANO, WISCONSIN, Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Wisconsin Michigan Power Company, Intervenor.

WISCONSIN ELECTRIC POWER COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Cities of New London and Shawano, Wisconsin, Intervenors.

The CITIES OF NEW LONDON AND SHAWANO, WISCONSIN, Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Wisconsin Michigan Power Co., Intervenor.

Nos. 77-1777, 77-1825, 77-1921 and 77-2045.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1978.

Decided June 29, 1979.

George F. Bruder, Washington, D. C., with whom James E. Hickey, Jr., Washington, D. C., was on the brief for petitioner, Wisconsin Electric Power Company in Nos. 77–1777 and 77–1921, intervenor in 77–1825 and 77–2045.

J. Leroy Thilly, Madison, Wis., with whom Richard L. Olson, Madison, Wis., was on the brief for petitioners, The Cities of New London and Shawano, Wisconsin, et al. in Nos. 77–1825, 77–2045, and intervenor in 77–1777 and 77–1921.

Gloria M. Sodaro, Atty., Federal Energy Regulatory Commission, Washington, D. C., with whom Howard E. Shapiro, Solicitor, Federal Energy Regulatory Commission, Washington, D. C., was on the brief for respondent.

Also Philip R. Telleen, Atty., Federal Energy Regulatory Commission, Washington, D. C., entered an appearance for respondent.

Before LEVENTHAL and ROBB, Circuit Judges, and BRYANT,* Chief Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by ROBB, Circuit Judge.

ROBB, Circuit Judge:

This case presents the consolidated petitions of the Wisconsin Electric Power Company [1] (the Company) and the Cities of Shawano, Wisconsin and New London, Wisconsin (the Cities) for review of orders of the Federal Energy Regulatory Commission.[2] These orders required the Company to reduce the rates it had filed with the Commission and to refund excess charges collected from the Cities pursuant to those rates. Because we believe the Commission correctly interpreted the contracts between the Company and the Cities and because we believe the Commission correctly calculated the refund due the Cities to avoid allowing them a windfall, we affirm the Commission's orders against the challenges of both the Company (in Nos. 77–1777 and 77–1921) and the Cities (in Nos. 77–1825 and 77–2045).

## I.

Since at least 1949 the Company has supplied the Cities and other municipal customers with electric power at a wholesale rate, which the customers in turn sold at retail rates to local consumers. The contracts governing the relationship of the Company to the Cities tied the wholesale rate to the rate at which the Company supplied power to its largest retail customers. Specifically, the contracts provided that:

It is hereby agreed and understood that should there be any revision and/or change in said Rate VII [the large industrial retail rate] approved by the Wisconsin Public Service Commission, at any time during the life of this contract, then the Distributor [the Cities] shall under this contract automatically receive and accept such revised rates.

(J.A. 184, 193)

In previous litigation, the Commission had interpreted this pricing clause. *See Wisconsin Michigan Power Co.*, 31 F.P.C. 1445 (1964). There, the Commission determined that "these agreements are not fixed rate contracts, since they plainly contemplate an escalation arrangement to maintain parity between the rates of the retail users and the wholesale rates." *Id.* at 1449. The Commission further cautioned that "[i]t is not our purpose to reject rate increase filings by hyper-technical interpretation of contract provisions which clearly contemplated a procedure for rate adjustments." *Id.*

The Company began this proceeding on November 28, 1975, by tendering for filing with the Commission a revised tariff schedule that increased the wholesale rates at which it sold power to the Cities. On December 29, 1975, most of the affected customers, including the Cities, petitioned to intervene in the proceeding. On December 31, 1975, the Commission accepted the filing and suspended the tariff for two months. On February 9, 1976, the Commission granted the Cities intervention, and limited the scope of the proceeding to exclude the issue of whether the contracts barred the Company from filing a unilateral rate increase. In that order of February 9, 1976 the Commission allowed the rate increase to go into effect, subject to refund. Although the Cities sought a rehearing on certain issues treated in the order (not including their contract claims), the rehearing was denied, and they did not seek judicial review.

---

* Sitting by designation pursuant to 28 U.S.C. 292(a).

1. The Wisconsin Michigan Power Company, a subsidiary of the Wisconsin Electric Power Company, was originally a party in this proceeding. On January 1, 1978, the two companies were merged, and the parent was substituted for the former subsidiary in this appeal.

References to the Company include both parent and subsidiary, as appropriate.

2. During the pendency of this appeal, the Federal Energy Regulatory Commission was established, as the successor agency to the Federal Power Commission. References to the Commission include both of those entities, as appropriate.

In a July 14, 1976 motion for reconsideration, the Cities belatedly addressed the specific question of contractual limitations on the *extent* of any unilateral rate increase sought by the Company. On April 29, 1977 the Commission interpreted the Cities/Company contracts, as limiting the wholesale electric rate to the state-regulated large industrial retail rate, ordered the Company to eliminate from its tariff filing that portion exceeding the large industrial retail rate, and required the Company to refund revenues collected in excess of the large industrial retail rate.

This order did not end the rate dispute because the Wisconsin Public Service Commission had raised the Large Industrial Retail Rate VII on August 16, 1976, and the Federal Power Commission's April 29, 1977 order left unclear the large industrial retail rate with reference to which the refund should be calculated and the prospective rate should be set. Both the Cities and the Company sought a rehearing.

By order of July 26, 1977 the Commission ordered the refunds calculated with reference to the lower large industrial retail rate, but in its subsequent order of September 16, 1977 the Commission required (1) that the refund calculation be adjusted to reflect the increase in the large industrial retail rate and (2) that the prospective rate be set to reflect the rate increase set by the Wisconsin Commission. Seeking to escape contractual limitations, the Company petitioned this court for review of the Commission's orders of April 29, July 26 and September 26. Seeking to obtain a larger refund and lower rate, the Cities petitioned for review of the September 26 order and of a November 10, 1977 order denying reconsideration.

## II.

▮ The Company's petitions for review raise two principal questions, both of which can be resolved by reference to previously decided cases. The first question concerns the applicability to this situation of the general principle that by contract with its customers a utility regulated by the Commission may surrender, limit or preserve its right to seek unilateral rate increases from the Commission. *See FPC v. Sierra Pacific Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956); *United Gas Pipeline Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956) (utilities surrendered right to seek rate increases); *United Gas Pipe Line Co. v. Memphis Light, Gas & Water Division*, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153 (1958) (utility preserved right to seek rate increases); *Richmond Power & Light v. FPC*, 156 U.S.App.D.C. 315, 481 F.2d 490, *cert. denied*, 414 U.S. 1068, 94 S.Ct. 578, 38 L.Ed.2d 473 (1973) (utility limited contractually its right to seek rate increases). The second question concerns the proper interpretation of the contracts involved in this proceeding.

Although the Commission initially stated that this proceeding involved no *Mobile-Sierra* issues because the contracts between the Cities and the Company did not fix a set rate, it properly abandoned that position on reconsideration. After this court's decision in the *Richmond Power & Light* case, *supra*, the conclusion that the Cities/Company contracts control the Company's tariff filings is inescapable.

In the *Richmond* case, as in this one, a utility had entered into a supply contract with a municipal retailer of electricity. *Id.* at 318, 481 F.2d at 493. There, as here, the contracts' pricing terms tied the wholesale rate at which the municipality received service to the retail rate at which the utility served its largest industrial customers. *Id.* at 318–19, 481 F.2d at 493–94. There, the Commission accepted tariffs, for filing, but this court reversed, holding that the tendered rates were inconsistent with the existing contracts. *Id.* at 326, 481 F.2d at 501. Here, the Commission itself corrected its error by ordering the elimination of the excess in the filed rate over the prevailing retail rate specified by contract. Accordingly, there can be no real dispute that the contracts control this rate filing. Attempts to distinguish this situation from the one presented in the *Richmond* case are unconvincing.

However, the Company argues that, as a matter of contract interpretation, these

contracts fail, as unsupported "synallagmatic" undertakings, that is, contracts "involving reciprocal executory obligations." Simply put, the Company would have this court consider the pricing clauses of its supply contracts with the Cities in isolation. The Company argues that the clauses require the Company to extend automatically, and the Cities to accept automatically a wholesale rate equal to the prevailing large industrial retail rate. Due to the intervening circumstances of federal regulation, the Company contends automatic extensions and automatic acceptances of the state-set large industrial retail rate are now impossible. Because the Cities have opposed the Company's rate filings, the Company argues that it is relieved of its corresponding obligation to limit its rate increases by reference to the large industrial retail rate.

If the pricing clauses of the contracts were considered in isolation, this interpretation of the Company's contractual obligations would at least be colorable. But the clauses cannot be considered in isolation. They are the pricing terms of supply contracts, the essential purpose of which is to provide a source and market for electric power generated by the Company and required by the Cities. The contracts were not intended to regulate the administrative minuet in which the Company seeks a rate increase from the Commission and the Cities intervene to oppose it. They were intended to govern the Company's sale of electric power to the Cities.

■ Consequently, the pricing terms must be interpreted with reference to the essential purpose of the contracts. The Commission has done so, first in its 1964 decision, *Wisconsin Michigan Power Co.*, 31 F.P.C. at 1449; and, more recently, in its April 29, 1977 order. We find that its interpretation of the pricing clauses, as intended to establish parity between the rate the Company charged the Cities and the rate the Company charged its largest industrial retail users, is supported by the record considered as a whole. Accordingly, we affirm the Commission's orders against the Company's challenges in Nos. 77–1777 and 77–1921.

## III.

The Cities quarrel with the Commission's calculation of the refunds due them and with the limited extent of the reductions the Commission ordered in the Company's tariffs. The Commission ordered the refund calculated to recognize a retail rate increase allowed by the Wisconsin Public Service Commission during the pendency of this proceeding, and ordered eliminated from the Company's tariff schedule only that portion of the wholesale rate that exceeded the Company's most recently approved large industrial retail rate. The Cities seek the calculation of the refund on the basis of, and the return of the wholesale rate to, the tariff filing in force before the Company began this rate proceeding.

In effect, the Cities contend that the Commission, although it corrected its error late in the proceeding by holding that the contracts were controlling, did not give them the last full measure of relief to which they were entitled. However, in resolving the Cities' claims, the timing of their petitions for review is important. These petitions were filed at a relatively advanced stage of the rate-making. The Cities did not seek review of the Commission order accepting the disputed tariff for filing, they obtained review of a rate reduction and refund order. In this aspect, their case presents a problem differing from that presented by litigants' petitions for review of orders accepting contractually invalid filings.

Although seeking review of a rate reduction and refund order, the Cities extend their challenge to the Commission's acceptance for filing of the Company's tariffs in the February 1976 order. Because the Commission corrected itself in the course of this proceeding, it is now clear that contractual limitations do govern the Company's filings and that the November 28, 1975 filing did exceed the contractual limitations. Whether the Commission should have rejected the filing on February 9, 1976 depends on how clear it was then that the contractual limitations were applicable. This court has addressed the question of when a filing should be rejected. *See Mu-*

nicipal Light Boards of Reading and Wakefield, Massachusetts v. FPC, 146 U.S.App. D.C. 294, 298–99, 450 F.2d 1341, 1345–46 (1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972). More recently, the Commission itself has addressed its responsibilities when contractual issues are initially raised in a tariff filing. See Kansas Gas & Electric Co., 43 Fed.Reg. 5042–43 (2/1/78).

However, in this case we do not consider the question of when the administrative "summary judgment" of a filing rejection is properly employed; instead, we review the elimination of a portion of a tariff already filed and the calculation of a refund. We prefer to consider these refund and elimination orders in the procedural context in which they properly arise, rather than using them to reach an issue not really before us.

■ In its order of September 26, 1977 the Commission required that the refund be the excess of charges actually collected over the amount which would have been collected if the wholesale rate had accurately tracked the large industrial retail rate during the pendency of the hearing. By doing so, the Commission gave full effect to the pricing terms of the contracts between the parties, but did not allow the Cities to derive any windfall from their slowness to assert in correct form their Mobile-Sierra rights.

■ As a general matter, the Commission enjoys broad equitable latitude in fashioning refund orders. Cf. Public Service Commission of New York v. FPC, 117 U.S. App.D.C. 287, 295, 329 F.2d 242, 250 (1964). Indeed, it may order a refund calculated to reflect a hypothetical interim, non-filed increase in rates. See Plaquemines Oil & Gas Co. v. FPC, 146 U.S.App.D.C. 287, 290–92, 450 F.2d 1334, 1338–40 (1971). Accordingly, the question is whether requiring the refund to reflect the retail rate increase was equitable in the circumstances of this litigation.

The Cities argue that to limit the refund gives effect to an invalid tariff filing. However, the tariff filing was improper only to the extent that it exceeded the contractually dictated parity with the large industrial retail rate. And the refund provisions do not give effect to that invalid portion of the tariff filing. That such a partial invalidity would have called for the rejection of the entire filing if the Commission had acted correctly in the first instance does not call for a refund calculated on the basis of the previously filed tariff. That the Company could have refiled a contractually proper tariff if the Cities had timely obtained the rejection of the excessive filing is not a consideration, for it would place on one party the onus of rectifying the other's procedural error. All the parties before the court have been to some extent delinquent: the Cities by faulty procedure, the Company by failure to abide by the contracts, the Commission by slowness to recognize a problem which had, after all, been previously litigated before it. We think the Commission's order treats the parties fairly, and gives full effect to the instructions of the Supreme Court and this court in the Sierra, Mobile and Richmond cases. Given the meandering course of this proceeding, the Commission acted equitably by hewing as closely as possible to the contractual expectations of the parties in fashioning its refund and rate elimination orders.

The Commission's requirement that the Company eliminate only that portion of the tariff filing that exceeds the current large industrial retail rate gives full effect to the contractual intentions of the parties. Because the impulse to protect private arrangements underlies the Sierra-Mobile doctrine, the elimination provisions are fully consistent with that line of cases. The arguments against the limited reduction of the tariff filing are the same as those against the calculation of the refund to reflect the increase in the large industrial retail rate. Having limited the refund order it would be a meaningless formality and create an internal inconsistency to require the Company to refile the tariff at the level of the most recent large industrial retail rate.

Accordingly, we affirm the Commission's orders against the challenges of the petitioner Cities in Nos. 77–1825 and 77–2045.

Affirmed.