MCI TELECOMMUNICATIONS CORPORATION, Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,

American Telephone & Telegraph Company, Southern Pacific Communications Company, United States Transmission Systems, Inc., Western Union Telegraph Company, Intervenors.

No. 80-1624.

United States Court of Appeals, District of Columbia Circuit.

Argued June 23, 1981.

Decided Sept. 24, 1981.

---

**73.** See text *supra* at note 66.

William J. Byrnes, Washington, D. C., with whom Michael H. Bader, Kenneth A. Cox and John M. Pelkey, Washington, D. C., were on the brief, for petitioner.

C. Grey Pash, Jr., Counsel, F.C.C., Washington, D. C., for respondents.

Robert R. Bruce, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and Jack David Smith, Counsel, F.C.C., Washington, D. C., were on the brief for respondents. Robert B. Nicholson and Nancy C. Garrison, Attys. Dept. of Justice, and John E. Ingle and Marjorie S. Reed, Counsel, F.C.C., Washington, D. C., also entered appearances for respondents.

· David J. Lewis, Washington, D. C., with whom Edward L. Friedman, New York City, Jules M. Perlberg, and Howard J. Trienens, Chicago, Ill., were on the brief, for intervenor, American Telephone and Telegraph Company. Edgar Mayfield, Bedminster, N. J., also entered an appearance for intervenor, American Tel. and Tel. Co.

Randall B. Lowe, Washington, D. C., entered an appearance for intervenor, United States Transmission Systems, Inc.

John V. Kenny and Daniel A. Huber, Washington, D. C., entered appearances for intervenor, Southern Pacific Communications Company.

Joel Yohalem and W. R. Weissman, Washington, D. C., entered appearances for intervenor, W. U. Tel. Co.

Before MIKVA and EDWARDS, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court filed by Chief Judge MARKEY.

\* Sitting by designation pursuant to 28 U.S.C. § 293(a).

**1.** 52 F.C.C.2d 727 (1975).

MARKEY, Chief Judge:

MCI Telecommunications Corporation (MCI) seeks review of an order of the Federal Communications Commission (FCC) permitting the Bell System Operating Companies and American Telephone and Telegraph Company (collectively, Bell) to file revised tariffs as part of a uniform across-the-board increase in Bell's rates for interstate telecommunications services. We grant review and vacate the order.

## BACKGROUND

On March 3, 1980, Bell filed tariff revisions with the FCC. Bell sought thereby to implement an across-the-board increase for its interstate telecommunications services, including its rates for facilities provided to other common carriers (OCCs), and to raise its rate of return to the then FCC authorized rate of 10.5%.

MCI opposed, urging that the rate increase violated a 1975 Settlement Agreement reached in FCC Docket 20099 [1] by Bell and a group of OCCs that included MCI and its affiliated companies. The FCC initiated Docket 20099 in 1974 to investigate Bell's tariffed rates for the OCCs' use of its facilities. Before hearings began, however, the parties reached a conditional agreement on the terms of those tariffs. The FCC accepted that agreement as a disposition of Docket 20099 and terminated the investigation. The FCC indicated, however, that it would closely monitor compliance with the agreement and retained authority to consider new developments.

The Agreement established interim rates for the OCCs' use of Bell's facilities. Those rates: (1) were to be effective for at least one year; (2) could be increased thereafter only upon Bell's filing rate revisions supported by cost data in compliance with Section 61.38 of FCC's rules (47 C.F.R. 61.38, as amended 1980); [2] and (3) could be increased only on six months notice to the OCCs.

**2.** Section 61.38 requires that tariffs be justified by supplying, as part of the tariff filing, the cost of providing the tariffed service.

Though Bell acknowledged the Settlement Agreement in its March 3, 1980 tariff filing, it neither provided cost justification for the rates in those tariffs nor gave the requisite six months notice. Bell urged that because there had been no increase in OCC facility rates for over five years, despite rising costs, the increase should apply to the OCCs.

In its Order of June 4, 1980, FCC held that the Settlement Agreement did not preclude application of the rate increase to OCCs, and permitted Bell to file and make effective tariff revisions for the OCC facilities on one day's notice.

## ISSUE

Whether the FCC properly refused to exempt the OCCs which were parties to the Settlement Agreement from an across-the-board rate increase for Bell's interstate telecommunications services.

## OPINION

MCI says that in filing tariff revisions which neither included cost support materials nor postponed the effective date of the revisions for six months after their filing, Bell abrogated the Settlement Agreement. Moreover, MCI says that the FCC's decision violates the doctrine of *FPC v. Sierra Pacific Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956) (*Sierra*) and *United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956) (*Mobile*). The "*Sierra-Mobile*" doctrine restricts federal agencies from permitting regulatees to unilaterally abrogate their private contracts by filing tariffs altering the terms of those contracts.

■ The FCC says the doctrine does not apply to the present Settlement Agreement because Bell's rate relationship with the OCCs was governed by tariffs, not by the Agreement. That contention is without merit. A contract, such as the Agreement here, may refer to rates included in a tariff and yet continue to enjoy protection under *Sierra-Mobile*. *Richmond Power & Light v. FPC*, 481 F.2d 490 (D.C.Cir.1973). Con-tracts and tariffs are not always mutually exclusive, but may be used in concert to define the relationship of the parties. In such circumstances, the contract governs the legality of subsequent tariff filings. "Rate filings consistent with contractual obligations are valid; rate filings inconsistent with contractual obligations are invalid." *Id.* at 493.

Nor is protection under *Sierra-Mobile* forfeited where, as here, the contract contemplates changes in the agreed rates.

> [The *Sierra-Mobile*] principles apply whether the parties agree to a specific rate or whether they agree to a rate changeable in a specific manner.

*Id.* at 497.

The FCC also says the Settlement Agreement does not come within *Sierra-Mobile* because it is not a private contract between two carriers, but is a "consensus agreement between the Bell System and representatives of several different industries". That position is equally untenable. A contract inevitably evidences a "consensus agreement" among its signatories. That more than two parties sign an agreement does not render it less binding on each of those signatories.

The FCC then says that by reserving the power to consider "any matter which [any party] believes requires [FCC] action" in Docket 20099, it retained the flexibility to supervise and make changes to the Settlement Agreement, thus rendering that Agreement distinct from the fixed, rigid inter-carrier rate agreements it says are governed by *Sierra-Mobile*. In construing a similar reservation in *Papago Tribal Utility Authority v. FERC*, 610 F.2d 914 (1979), this court found it sufficient to permit rate changes by prescription only, not by unilateral action of a party. Whatever may be said of statutes granting regulatory agencies authority to make changes in contracts via the prescription power, the Communications Act of 1934 grants the FCC no authority to authorize unilateral changes in agreements. *Bell Telephone Co. of Pennsylvania v. FCC*, 503 F.2d 1250, 1280 (3d Cir. 1974).

Nor does the FCC's citation of the rise in interest rates and inflation during the interim rate period, and the resultant failure of Bell to earn a current fair return on its investment, reflect an adequate basis for disregarding the Settlement Agreement. In rejecting such an assertion in *Sierra*, the Court said:

> [T]he Commission holds that the contract rate is unreasonable solely because it yields less than a fair return on the net invested capital. But, while it may be that the Commission may not normally *impose* upon the public utility a rate which would produce less than a fair return, it does not follow that the public utility may not itself agree by contract to a rate affording less than a fair return or that, if it does so, it is entitled to be relieved of its improvident bargain. [Emphasis in original.]

350 U.S. at 354–55, 76 S.Ct. at 372.

Similarly, the FCC's assertion that across-the-board increases are excepted from the Settlement Agreement is without support in the evidence. Nothing in the Agreement or acts of the parties thereto indicate an exception for across-the-board increases. Moreover, Bell is not precluded by the Agreement from increasing rates, across-the-board or otherwise; it is merely required to follow the Agreement-prescribed process in doing so insofar as the proposed rates affect the OCC parties to the Agreement. In the present instance, Bell simply ignored the Agreement's provisions for cost-based rate revision and notice. Inflation and higher interest rates, for example, could have been taken into account by Bell in cost-supported rate revisions, yet Bell made no attempt to file such revisions. Having failed to take advantage of the Agreement's process for increasing rates, Bell is not entitled to be relieved of its contractual obligation.

Charging MCI with an attempt to immunize itself from rate increases, the FCC says permitting the rate increase here would protect the public interest by ensuring that all users of Bell's services are treated equitably, and would ensure that the Agreement does not excessively burden other consumers. The Supreme Court has recognized the authority of a regulatory agency to modify contracts that might "cast upon other consumers an excessive burden", but has required that contract modification must follow investigation and a determination that the contract was unjust, unreasonable, unduly discriminatory, or preferential. *Sierra, supra.* It is undisputed that no such investigation has been conducted here. Moreover, because Bell failed to submit data reflecting the costs of providing facilities to the OCCs, there is no adequate factual basis for the FCC's assertion that users of Bell's other services would be excessively burdened or would be required to subsidize the rates charged for OCC facilities.

### CONCLUSION

The Docket No. 20099 Settlement Agreement restricts Bell from raising its rates for OCC facilities, when the raised rates are not cost-supported and Bell has not given the OCCs notice of the change at least six months before the effective date of the raised rates. That Agreement applies equally to all rate revisions and makes no exception for "across-the-board" increases.

In filing its March 3, 1980 tariff revisions, Bell failed to comply with the terms of the Agreement. Because there is no evidence that the Agreement contravenes the public interest, the FCC was required by *Sierra-Mobile* to reject Bell's tariff revisions insofar as they apply to facilities covered by the Settlement Agreement.

Accordingly, the FCC order refusing to reject the tariff revisions applicable to the OCCs is vacated.