711 F.2d 219
 228 U.S.App.D.C. 433
 FLORIDA POWER & LIGHT CO., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Resources Recovery (Dade County), Inc., Intervenor.
FLORIDA POWER & LIGHT CO., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Resources Recovery (Dade County), Inc., Intervenor.
 Nos. 82-1708, 82-1709.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 19, 1983.
Decided June 14, 1983.
 
 [228 U.S.App.D.C. 434] Petition for Review of Orders of the Federal Energy Regulatory commission.
 J.A. Bouknight, Jr., Washington, D.C., with whom Jill E. Grant, Washington, D.C., was on the brief, for petitioner.
 Robert F. Shapiro, Atty., F.E.R.C., Washington, D.C., for respondent.
 Barbara J. Weller, Deputy Sol., F.E.R.C., Joanne Leveque and Michael Kessler, Attys., F.E.R.C., Washington, D.C., were on the brief, for respondent.
 David J. Bardin, Lewis E. Leibowitz and Donald B. Mitchell, Jr., Washington, D.C., were on the brief, for intervenor.
 Before EDWARDS, Circuit Judge, MacKINNON, Senior Circuit Judge, and FAIRCHILD,* Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit.
 Opinion for the Court filed by Senior Circuit Judge FAIRCHILD.
 [228 U.S.App.D.C. 435] FAIRCHILD, Senior Circuit Judge:
 
 
 1
 Petitioner, Florida Power & Light Company ("FPL"), seeks review of orders by the Federal Energy Regulatory Commission ("the Commission") dismissing FPL's challenges to the self-qualification by Resources Recovery (Dade County), Inc. ("RRD") of a small power production facility and to its filing of initial energy rates for the facility under provisions of the Public Utility Regulatory Policies Act (PURPA). FPL contends that RRD's claims to qualifying status and resulting rate payments by FPL under PURPA conflict with "preexisting contractual arrangements which obligate RRD to surrender possession of the [facility] upon completion of construction and which entitle FPL to acquire the energy produced ... on terms specified by contract." Brief for Petitioner at 1-2. RRD's contractual obligations are currently the subject of state court proceedings. The Commission declined to consider FPL's challenges pending resolution of those proceedings. We affirm.
 
 I.
 
 2
 Resource Recovery (Dade County) Construction Corporation ("RRDC") and Dade County, Florida entered into contracts which called on RRDC to construct facilities capable of producing steam from processed solid waste and generating electricity from the steam.[1] On completion of construction, title to the waste processing facility and the electrical generating facility were to pass to the County. By contract between the County and FPL, title to the electrical generating facility was to be transfered to FPL. RRD was to operate the processing facility and sell steam to FPL at specified prices.
 
 
 3
 But contractual disputes arose between the County and RRDC during construction. The substance of these disputes was eventually referred to arbitration.[2] Pending resolution RRDC continued to construct the facilities. On completion RRDC refused to transfer title and RRD assumed their operation.
 
 
 4
 On March 13, 1981 RRD filed a Notice of Qualification for a small power production facility. RRD's notice stated that it was the owner and operator of a resource recovery facility which met all the criteria necessary to satisfy the Commission's self-certification regulation for small power production facilities. See 18 C.F.R. § 292.207(a). This notice filing entitled RRD to specific benefits under PURPA. See 16 U.S.C. § 824a-3. Most importantly, it required electric utilities--in this case FPL--to purchase energy from the qualifying small power production facility at favorable rates. 16 U.S.C. §§ 824a-3(a)(2), 3(b). Following RRD's filing of a Notice of Qualification, it filed with the Commission a schedule of electric energy rates based on FPL's full avoided costs.[3]
 
 
 5
 [228 U.S.App.D.C. 436] FPL filed petitions with the Commission protesting RRD's notice and proposed rates. FPL argued that RRD's qualifying notice was inconsistent with its contractual obligations to relinquish ownership of the electric generating facility and to provide steam at agreed upon rates. FPL also asserted that the uncertainty of RRD's obligations required it to obtain a formal determination of its qualifying status pursuant to 18 C.F.R. § 292.207(b) rather than merely claim that status through the self-certification process under § 292.207(a). Finally, FPL argued that even if RRD is entitled to qualifying status, its proposed rates conflict with this court's decision in American Elec., Etc. v. Federal Energy Reg., 675 F.2d 1226 (D.C.Cir.1982), rev'd, --- U.S. ----, 103 S.Ct. 1921, 76 L.Ed.2d 22 (1983), and FPL's pending state court challenge to the valuation of FPL's full avoided costs. See note 3 supra.
 
 
 6
 In a series of orders, the Commission rejected each of these arguments. As to FPL's contention that RRD's qualification notice was inconsistent with its contractual obligations, the Commission declined "to sift through the competing claims of the parties to determine, under state contract law, who is the rightful owner or operator of the facility." Appendix at 4. The Commission ruled that these commercial issues "should be resolved in the state forum of competent jurisdiction." Id. On rehearing, the Commission stated:
 
 
 7
 [T]he issue of who owns the facility is currently being decided in a state forum of competent jurisdiction. Under the circumstances of this case, we are not inclined to interfere with the state court's consideration of state contract principles. FPL has the opportunity to seek revocation of RRD's qualifying status if the commercial dispute is resolved in its favor. In the interim, we perceive no irreparable harm accruing to FPL.
 
 
 8
 Id. at 9. The Commission also declined to upset RRD's § 292.207(a) self-certification on the basis of a "substantive commercial dispute," observing that FPL would have an opportunity to seek revocation of RRD's qualifying status when "the commercial dispute is resolved." Id. at 5.
 
 
 9
 As to RRD's rate filing, the Commission found the rates just and reasonable, and made them effective subject to possible refund in the event of a final adverse ruling in American Electric or state court proceedings.[4] The Commission declined, on rehearing, to require a surety bond from RRD, indicating that such a requirement would be inappropriate where based principally upon a state-law contract dispute, and would, in any event, be contrary to traditional practice.
 
 II.
 
 10
 By petition for review, FPL raises two principal objections to the Commission's refusal to disturb RRD's claim to self-qualifying status pursuant to § 292.207(a). First, FPL contends that the Commission is required to examine whether the claim to qualifying status conflicts with RRD's contractual obligations by Supreme Court doctrine announced in United Gas Pipeline Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956), and FPC v. Sierra Pacific Power Co., 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). Second, FPL contends that a dispute over ownership of a facility prevents self-certification under the Commission's own procedures. We find no merit in either objection.
 
 
 11
 The Mobile-Sierra doctrine prohibits the Commission from accepting a new rate filing as lawful under the Federal Power Act where unilaterally submitted by a party contractually committed to a different rate. This doctrine has no application, however, to RRD's claim to qualifying status under § 292.207(a). Unlike a rate approval under the Federal Power Act, a claim to qualifying status under § 292.207(a) requires no review by the Commission. By regulation [228 U.S.App.D.C. 437] RRD is entitled to seek qualifying status for a facility so long as it is the owner or operator and meets the basic criteria of § 292.203. FPL argues the RRD is not legally the owner or operator under the terms of its contract with the County, but in fact RRD presently operates the facility at issue. Although indicating its willingness to reconsider the matter in the event ownership or operation of the facility should change following state court resolution of the contract dispute, the Commission refused to disturb RRD's facially valid self-certification of its facility. We find this a proper exercise of the Commission's discretion.
 
 
 12
 Nor do we find the Commission's acceptance of RRD's initial rate filing in violation of this circuit's decision in City of Cleveland, Ohio v. FPC, 525 F.2d 845 (D.C.Cir.1976) (requiring adjudication of claim that utility's rate filing is in conflict with contractual rates). Unlike that case the Commission does not purport to accept the rates as just and reasonable, but rather conditions its "acceptance of RRD's rates [as approved by FPSC] on an agreement to make them subject to refund pending outcome of [state court] proceedings." Appendix at 22; see note 3 supra. The Commission went on to explain:
 
 
 13
 Implicit in such a condition is our conclusion that the FPSC rates may not ultimately be found to be just and reasonable, depending on the outcome of the court proceedings. Thus, refunds may be ordered of any amounts in excess of what is ultimately determined to be the just and reasonable rate.
 
 
 14
 Id. In our view the Commission is denying FPL neither adjudication of its dispute over rates, albeit initially in a state forum, or eventual review before the Commission.[5]
 
 
 15
 FPL also contends that the Commission's refusal to examine RRD's contractual right to operation of the facility, in light of FPL's protest, was contrary to the Commission's own procedures. We find no departure from past practice. FPL refers us to an earlier statement by the Commission suggesting that in "questionable" cases the formal application procedure for qualification under § 292.207(b) should be used rather than the § 292.207(a) self-certification procedure. But the language of § 292.207 and the Commission's own interpretation suggests that the choice of which certification procedure to follow is left to the applicant. Even if FPL is correct in asserting that a formal determination of qualification is required in questionable cases, the Commission observed that "pending some change in the operation of the facility, [the Commission has] no grounds on which to question the self-certification of [RRD]." Appendix at 9. Again we find this reasoning and its implied deference to pending state court proceedings within the agency's discretion.
 
 III.
 
 16
 Assuming the self-certification was proper, FPL argues the Commission nevertheless erred by not requiring RRD to post a surety bond or some other guaranty in the event a refund is later required. This decision appears to fall clearly within the Commission's broad discretionary power, and we find nothing in this record to disturb its decision.[6] See 16 U.S.C. 825h (conferring discretionary power on the Commission "to perform any and all acts ... as it may find necessary or appropriate to carry out the provisions of [the Federal Power Act]").
 
 
 17
 [228 U.S.App.D.C. 438] For the reasons stated, the decisions of the Federal Energy Regulatory Commission are AFFIRMED.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(d)
 
 
 [1]
 RRDC and RRD are both wholly-owned subsidiaries of Parsons & Whittemore, Inc., "a corporation engaged in a variety of industrial activities in the United States" and abroad. Brief for Intervenor RRD at 5. RRDC was apparently responsible for construction of the facilities, RRD with their operation
 
 
 [2]
 An arbitration award was issued March 1, 1983 finding both parties had committed breaches, denying damages to either side and purporting to "rewrite" the contracts to approximate the parties' intent (leaving RRD in possession of the facilities and entitling it to charge FPL for energy at PURPA rates prescribed by the Florida Public Service Commission). This award was confirmed by the Circuit Court of the 11th Judicial Circuit for Dade County on March 31, 1983
 
 
 [3]
 Prior to submitting a rate schedule to the Commission, RRD obtained orders from the Florida Public Service Commission ("FPSC") requiring FPL to interconnect with the resource recovery facility and pay RRD the avoided costs of its output. FPL disputed the orders before FPSC and on direct appeal to the Florida Supreme Court. On March 17, 1983 the Florida court reversed FPSC's order calling for payment of FPL's avoided costs, ruling that FPSC lacked the statutory authority to promulgate cogeneration rules and that it failed to provide FPL a full hearing. Florida Power & Light Co. v. Florida Public Service Commission, No. 60,671 (Fla.S.Ct. March 17, 1983). Motions for rehearing of that decision were filed on April 4, 1983. FPL's challenge to FPSC's interconnection order is still pending. Metropolitan Dade County, Florida and Florida Power & Light Co. v. FPSC, No. 61,536 (Fla.S.Ct., argued October 5, 1982)
 
 
 [4]
 RRD indicated its acceptance of this condition in a letter filed with the Commission on April 12, 1982
 
 
 [5]
 FPL suggests that any later challenge of initially accepted rates may be barred by the "filed rate doctrine." See Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 573, 101 S.Ct. 2925, 2928, 69 L.Ed.2d 856 (1981). Given the Commission's conditional acceptance of RRD's rates, and RRD's express agreement to abide by the condition, see note 4 supra, we find this an unlikely possibility
 
 
 [6]
 Indeed, the Commission's determination that the requirement of posting a bond or providing some other guarantee is contrary to agency tradition is supported by FPL's failure to find more than two cases to suggest a contrary practice. Brief for FPL at 33 n. 40