Justice Stevens,
dissenting.
The opinion that the Court announces today is the third chapter in a story about how a reasonable principle, extended beyond its foundation, becomes bad law.
In the first chapter the Court wisely and correctly held that a seller who is a party to a long-term contract to provide energy to a wholesaler could not unilaterally repudiate its contract obligations in response to changes in market conditions by simply filing a new rate schedule with the regulatory commission. Only if the rate was so low that the seller might be unable to stay in business, thereby impairing the public interest, could the seller be excused from performing its contract. That is what the Court held in United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U. S. 332 (1956), and FPC v. Sierra Pacific Power Co., 350 U. S. 348 (1956).
In the second chapter the Court unwisely and incorrectly held that the same rule should apply to a buyer who had been forced by unprecedented market conditions to enter into a long-term contract to buy energy at abnormally high prices. The Court held the Federal Energy Regulatory Commission (FERC) could not set aside such a contract as unjust and unreasonable, even though it saddled consumers with a duty to pay prices that would be considered unjust and unreasonable under normal market conditions, unless the purchaser could also prove that “the contract seriously harms the public interest.” Morgan Stanley Capital Group Inc. v. Public Util. Dist. No. 1 of Snohomish Cty., 554 U. S. 527, 530 (2008).
*178 The Court held in Morgan Stanley that Mobile-Sierra established a presumption: FERC “must presume that the rate set out in a freely negotiated wholesale-energy contract meets the ‘just and reasonable’ requirement imposed by law.” 554 U. S., at 530. And that presumption, according to the Court, is a simple application of the just-and-reasonable standard to contract rates, not a different standard of review. Id., at 535 (rejecting the “obviously indefensible proposition that a standard different from the statutory just-and-reasonable standard applies to contract rates”). But applying the presumption nonetheless sets a higher bar for a rate challenge.[1] FERC may abrogate the rate only if the public interest is seriously harmed. Id., at 550-551 (“[UJnder the Mobile-Sierra presumption, setting aside a contract rate requires a finding of ‘unequivocal public necessity,’ ” Permian Basin Area Rate Cases, 390 U. S. 747, 822 (1968), “or ‘extraordinary circumstances,’ Arkansas Louisiana Gas Co. v. Hall, 453 U. S. 571, 582 (1981)”).
As I explained in my dissent in Morgan Stanley, the imposition of this additional burden on purchasers challenging rates was not authorized by the governing statute. Under the Federal Power Act (FPA), all wholesale electricity rates must be “just and reasonable.” 16 U. S. C. §824d(a). “[N]othing in the statute mandates differing application of the statutory standard to rates set by contract.” Morgan Stanley, 554 U. S., at 557 (Stevens, J., dissenting) (internal quotation marks omitted; emphasis deleted). And the Mobile-Sierra line of cases did not “mandate a ‘serious harm’ standard of review,” much less “require any assumption that high rates and low rates impose symmetric burdens on the public interest.” Morgan Stanley, 554 U. S., at 561-562 *179 (Stevens, J., dissenting). Instead, “the statement in Permian Basin about ‘unequivocal public necessity,’ 390 U. S., at 822, speaks to the difficulty of establishing injury to the public interest in the context of a low-rate challenge,” i. e., one brought by sellers of electricity. Id., at 562. It does not establish a new standard that applies as well to a “high-rate challenge” brought by purchasers. Ibid.
But even accepting Morgan Stanley as the law, the Court unwisely goes further today. In this third chapter of the Mobile-Sierra story, the Court applies a rule — one designed initially to protect the enforceability of freely negotiated contracts against parties who seek a release from their obligations — to impose a special burden on third parties exercising their statutory right to object to unjust and unreasonable rates. This application of the rule represents a quantum leap from the modest origin set forth in the first chapter of this tale. As the Court of Appeals correctly concluded in the opinion that the Court sets aside today: “This case is clearly outside the scope of the Mobile-Sierra doctrine.” Maine Pub. Util. Comm’n v. FERC, 520 F. 3d 464, 477 (CADC 2008) (per curiam).
As the D. C. Circuit noted,[2] “[cjourts have rarely mentioned the Mobile-Sierra doctrine without reiterating that it is premised on the existence of a voluntary contract between the parties.” Ibid. But, the Court asks, “if FERC itself must presume just and reasonable a contract rate resulting from fair, arm’s-length negotiations, how can it be maintained that noncontracting parties nevertheless may escape that presumption?” Ante, at 174-175. This Court’s under *180 standing of Sierra provides an answer. “Sierra was grounded in the commonsense notion that ‘[i]n wholesale markets, the party charging the rate and the party charged [are] often sophisticated businesses enjoying presumptively equal bargaining power, who could be expected to negotiate a “just and reasonable” rate as between the two of them.’” Morgan Stanley, 554 U. S., at 545 (quoting Verizon Communications Inc. v. FCC, 535 U. S. 467, 479 (2002); emphasis added). This “commonsense notion” supports the rule requiring FERC to apply a presumption against letting a party out of its own contract, as the D. C. Circuit recognized. 520 F. 3d, at 478 (“The Mobile-Sierra doctrine applies a more deferential standard of review to preserve the terms of the bargain as between the contracting parties”). It does not, however, support a rule requiring FERC to apply a presumption against abrogating any rate set by contract, even when, as in this case, a noncontracting party may be required in practice to pay a rate it did not agree to.
The Court further reasons that “confinement of Mobile-Sierra to rate challenges by contracting parties diminishes the animating purpose of the doctrine,” which is ensuring the stability of contract-based supply arrangements. Ante, at 175. Maybe so, but applying Mobile-Sierra to rate challenges by noncontracting parties loses sight of the animating purpose of the FPA, which is “the protection of the public interest.” Sierra, 350 U. S., at 355. That interest is “the interest of consumers in paying ‘the “lowest possible reasonable rate consistent with the maintenance of adequate service in the public interest.”’” Morgan Stanley, 554 U. S., at 561 (Stevens, J., dissenting) (quoting Permian Basin, 390 U. S., at 793). I do not doubt that stable energy markets are important to the public interest, but “under the FPA, Congress has charged FERC, not the courts, with balancing the short-term and long-term interests of consumers” under the just-and-reasonable standard of review. Morgan Stanley, 554 U. S., at 563 (Stevens, J., dissenting). The Court *181 today imposes additional limits upon FERC’s ability to protect that interest. If a third-party wholesale buyer can show a rate harms the public interest (perhaps because it is too high to be just and reasonable under normal review), but cannot show it seriously harms the public, FERC may do nothing about it.[3]
The Court assures respondents that the “public interest standard” does not “overlook third-party interests” and is “framed with a view to their protection.” Ante, at 174, 175. Perhaps in practice the Mobile-Sierra doctrine will protect third parties’ interests, and the public interest, just as well as the so-called “ordinary” just-and-reasonable standard. But respondents are rightly skeptical. The Mobile-Sierra doctrine, as interpreted by the Court in Morgan Stanley, must pose a higher bar to respondents’ rate challenge — that is, it requires them to show greater harm to the public.[4] *182 Otherwise, it would hardly serve to protect contract stability better than the plain vanilla just-and-reasonable standard and the Court’s decision in Morgan Stanley would have little effect. Furthermore, the Court today reiterates that the doctrine poses a high bar. See ante, at 173-174.
It was sensible to require a contracting party to show something more than its own desire to get out of what proved to be a bad bargain before FERC could abrogate the parties’ bargain. It is not sensible, nor authorized by the statute, for the Court to change the de facto standard of review whenever a rate is set by private contract, based solely on the Court’s view that contract stability should be preserved unless there is extraordinary harm to the public interest.
For these reasons, I respectfully dissent.

 Whether the Court explains the Mobile-Sierra doctrine as a presumption or as a different standard of review, “[t]here is no significant difference between requiring a heightened showing to overcome an otherwise conclusive presumption and imposing a heightened standard of review.” Morgan Stanley, 554 U. S., at 557 (Stevens, J., dissenting).

 Because the D. C. Circuit’s opinion was written before this Court’s decision in Morgan Stanley, that court’s purported error in describing the Mobile-Sierra doctrine as an “exception” to the just-and-reasonable standard, 520 F. 3d, at 477, is understandable. As that court recognized, and the majority does not change today, the Mobile-Sierra standard in fact “makes it harder for [respondents] to successfully challenge rates.” 520 F. 3d, at 478.

 FERC agrees with petitioners that the public interest standard “govern[s] all challenges to the rates set by contract, regardless of the identity of the challenger.” Reply Brief for FERC 4. But “not even FERC has the authority to endorse [this] rule.” Morgan Stanley, 554 U. S., at 563 (Stevens, J., dissenting). “The FPA does not indulge, much less require, a ‘practically insurmountable’ presumption, see Papago Tribal Util. Auth. v. FERC, 723 F. 2d 950, 954 (CADC 1983) (opinion for the court by Scalia, J.), that all rates set by contract comport with the public interest and are therefore just and reasonable.” Id., at 563-564.

 In my view, “whether a rate is ‘just and reasonable’ is measured against the public interest, not the private interests of regulated [parties].” Id., at 561. But I note the Court’s assertion that the Mobile-Sierra doctrine protects “third-party interests,” ante, at 175, is a new twist on the “public interest standard” as traditionally understood. As the Court recognized in Morgan Stanley, one consequence of applying Mobile-Sierra is that “‘the sole concern of the Commission’” is the public interest, and FERC cannot consider, for example, whether a rate guarantees a sufficient rate of return to a regulated entity. 554 U. S., at 533 (quoting FPC v. Sierra Pacific Power Co., 350 U. S. 348, 355 (1956)); see also Morgan Stanley, 554 U. S., at 566, n. 3. In addition to requiring that FERC find some greater degree of harm to the public than would be required under the ordinary just-and-reasonable standard, therefore, the Mobile-Sierra doctrine leaves little room for respondents — at least one of *182 which did not negotiate the rate but must nonetheless purchase electricity at that price in the forward capacity market unless it self-supplies its capacity — to assert their private interest in making a rate challenge. The Court suggests that FERC could set aside a rate under the public interest standard if the contract established favorable rates between allied businesses to the detriment of other wholesale customers, ante, at 175, but has not spelled out whether a challenger would still have to show that circumstance harmed the public interest. It remains unclear whether a noncontracting party that must purchase or sell electricity at a rate it did not negotiate could argue that a rate fails the “public interest standard” because the rate is detrimental to that entity’s private interest.