**KANSAS GAS & ELECTRIC COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Cities of Arcadia, et al., Intervenors.

No. 83–2328.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 7, 1985.

Decided April 5, 1985.

J. Michael Peters, Wichita, Kan., for petitioner.

Andrea Wolfman, Atty., F.E.R.C., Washington, D.C., with whom Barbara J. Weller, Deputy Sol., F.E.R.C., Washington, D.C., was on the brief, for respondent.

Charles F. Wheatley, Jr., Washington, D.C., with whom Peter A. Goldsmith, Washington, D.C., was on the brief, for intervenor.

Before WRIGHT, BORK, and STARR, Circuit Judges.

Opinion for the court filed by Circuit Judge WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

This case presents the latest episode in a protracted battle over Kansas Gas & Electric Company's (KG & E) use of "minimum billing demand clauses" in its contracts with municipal customers. Specifically, KG & E petitions this court to reverse a Federal Energy Regulatory Commission (FERC) decision disallowing use of the clauses in a given period. KG & E maintains that FERC improperly assigned it the burden of proof to justify use of these clauses.

Although the subject is arcane, our inquiry is clear. We must determine whether FERC's decision comports with the agency's statutory mandate and regulatory responsibility. Because we find that FERC's decision was fully within its permissible administrative discretion, we affirm.

## I. BACKGROUND

### A. *Rate Structure*

This case plunges us into the intricacies of rate structure. Under the Federal Power Act, FERC is charged with finding that rates are "just and reasonable." 16 U.S.C. §§ 824d, 824e (1982). This determination requires careful scrutiny of the complexities of the proposed rate structure. "Public utility rates are designed to do more than recover the cost of service; they are intended to allocate cost of service among customers in a reasonable manner." *Cities of Batavia v. FERC*, 672 F.2d 64, 80 (D.C.Cir.1982).

Two features of rate structure must be considered at the outset: demand allocation and demand billing. Although both features figure in a utility's overall rate structure, they have different missions. "While methods of demand allocation distribute the demand charge among *classes* of customers, * * * a method of demand billing [ ] distributes a class' allocated demand among members of that class." *Id.* at 83 (emphasis in original).

The relationship of these features to KG-& E's dispute with FERC will be discussed in the context of that dispute. Before reviewing the KG & E dispute, however, it is helpful to briefly review the nature of demand allocation method and demand billing.

1. *Demand allocation.* Demand allocation determines the charge allocated to a *class* of customers. A 12-month coincident peak method, commonly known as the 12-CP method, is one form of demand allocation. "Under this method, demand costs are allocated by taking the hour of highest total usage (the coincident peak) during each of the preceding twelve months, determining the percentage of peak usage drawn by each customer class during each of the twelve months, and averaging the resulting percentages for each customer class." *Second Taxing District of City of Norwalk v. FERC*, 683 F.2d 477, 480 (D.C. Cir.1982). In contrast, other demand allocation methods are based on peak usage during a different number of months. A 3-CP method, for instance, is based on peak usage during three specified months. Under a typical 3-CP method, the utility might seek "to allocate fixed costs among customers based on each customer's demand for electricity during [the utility's] peak sales months of June, July and August." *Cities of Bethany v. FERC*, 727 F.2d 1131, 1135 (D.C.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 293, 83 L.Ed.2d 229 (1984). Thus the demand allocation method governs the allocation to classes of customers.

2. *Billing demand.* Billing demand, in turn, determines the billing total for *each* member of the class. One billing demand method, commonly known as a "ratchet," is "a billing device that sets the minimum demand cost for a utility customer at some fixed percentage of the customer's maximum demand during a particular period." *Cities of Batavia, supra,* 672 F.2d at 83. In contrast, "in the *absence* of a demand billing ratchet, the twelve * * * monthly (metered) demands of all customers in a given class are simply summed." *Central Illinois Light Co.,* 10 FERC ¶ 61,248, 61,473 (March 20, 1980), *reversed and remanded*

*on other grounds sub nom. Villages of Chatham and Riverton, Illinois v. FERC,* 662 F.2d 23 (D.C.Cir.1981). Thus a ratchet substitutes a formula based on a customer's peak for actual demand.

3. *The combination of a 12–CP method and a ratchet.* As this court has explained, "There is no necessary relationship between a particular method of demand allocation and a particular method of demand billing." *Cities of Batavia, supra,* 672 F.2d at 83. Since at least 1978, however, FERC has expressed concern about the use of a ratchet in combination with a 12–CP method. In *Carolina Power & Light Co.,* 4 FERC ¶ 61,107 (August 2, 1978), the Commission disallowed the use of a 95 percent ratchet with a 12–CP method. FERC emphasized, "Although neither the Federal Power Act nor our Regulations prohibit the combined use of a 12–CP method of demand cost allocation and a rate design based in part on demand during only a portion of the year, such ratchet is generally undesirable for the reason that it generates differences in customer billings which are not entirely cost justified." *Id.* at 61,232 (footnote omitted).

Two years later FERC elaborated its concern about this combination. In *Central Illinois Light Co., supra,* the Commission disallowed the use of a 60 percent demand ratchet with a 12–CP method of allocation. It found the combination "likely to be unjust and inequitable." 10 FERC at 61,473. The Commission explained: "We note that one important working assumption of the 12-month average coincident peak method of allocation is that actual demands of the respective customers in *each* of the months contribute to system coincident demand or, in other words, result in actual cost causation, and to a roughly uniform degree." *Id.* at 61,474–61,475 (emphasis in original). Thus "a given individual customer's month-

ly 12–CP demand allocating factor is generally in itself, without imposition of the added ratchet, also the most appropriate basis for deriving its demand charge billing determinant." *Id.* at 61,475. In short, FERC found a ratchet generally unnecessary and incompatible with the 12–CP method.[1] The Commission announced that, in view of this effect, "[w]here * * * the 12–CP method of demand allocation has been well-chosen—for example, because of a relatively 'level' or 'flat' monthly system-wide demand pattern—the applicant utility must bear the burden of demonstrating that the ensuing disadvantages to consumers of an additionally imposed demand ratchet are *outweighed* by any benefits to be derived by the utility itself, or by the consuming public." *Id.* at 61,475 (emphasis in original). *See also Minnesota Power & Light Co.,* 11 FERC ¶ 61,311, 61,649–61,650 (June 24, 1980) (reiterating *Central Illinois* standard).

FERC has made clear, however, that, although the utility must show that its combination has outweighing benefits, the Commission has not adopted a *per se* rule against the combination. Indeed, when it has determined that the utility has made the required showing, the Commission has permitted a demand ratchet in combination with a 12–CP demand allocator. *See Connecticut Light & Power Co.,* 14 FERC ¶ 61,139 (February 19, 1981), *affirmed sub nom. Second Taxing District of City of Norwalk v. FERC, supra; Union Electric Co.,* 12 FERC ¶¶ 61,239, 61,586 (September 2, 1980). Similarly, this court has noted that FERC's determination on the permissibility of the ratchet/12–CP combination "rest[s] with the facts of the particular case." *Second Taxing District of City of Norwalk, supra,* 683 F.2d at 488.

In short, FERC has identified ways in which the combination of a 12–CP method

---

1. The Commission also expressed concern that one result of the ratchet/12–CP combination would be that "low-usage members of the wholesale class affected by operation of the ratchet during a given month will in effect be subsidizing those class members with recorded floors *above* the 'ratcheted' level." *Central Illi-*

*nois Light Co.,* 10 FERC ¶¶ 61,248, 61,474 (March 20, 1980) (emphasis in original). For further discussion of this effect in the context of a ratchet/12–CP combination, *see Second Taxing District of City of Norwalk v. FERC,* 683 F.2d 477, 487 (D.C.Cir.1982).

and a ratchet may produce unjust and unreasonable results, and it has put the burden on the utility to prove that its combination has outweighing benefits that justify its use.

### B. *Procedural History*

This dispute has a long and tangled procedural history. To fully understand this petition, it is helpful to review each step of the tortuous path leading to the current juncture.

1. *The prior docket.* The dispute over the minimum billing demand clauses has its roots in KG & E's prior docket.[2]

a. *The initial ALJ decision.* On September 16, 1977 KG & E filed Docket No. ER 77–578 before FERC's predecessor, the Federal Power Commission. The docket concerned KG & E's rates for various municipal customers.[3] As part of that docket KG & E proposed to use minimum billing demand clauses in combination with a 12–CP method of demand cost allocation.[4] FERC evaluated the proposed rates under Sections 205 and 206 of the Federal Power Act, 16 U.S.C. §§ 824d, 824e (1982), both of which require the Commission to determine that the rates are "just and reasonable."

Among other issues, the cities challenged use of the minimum billing demand clauses in combination with KG & E's proposed 12–CP demand allocation. The thrust of their objection was that the clauses operated as a ratchet and that the ratchet/12–CP combination should not be allowed. On May 29, 1979 the Administrative Law Judge disallowed use of the clauses. *Kansas Gas & Electric Co.,* Docket No. ER 77–578, 7 FERC ¶ 63,051 (May 29, 1979). He found, first, that, for KG & E, "the

12–CP method is a just and reasonable method of demand allocation." *Id.* at 65,-242. He then found that the minimum billing demand clauses "operate exactly like demand ratchets in that when peak demand is increased, the contract billing demand is adjusted upward by the amount of such increase so that a new minimum contract billing demand is established." *Id.* at 65,244. Agreeing with the cities that the clauses were "inconsistent with the 12–CP method," *id.,* he found that the utility had failed "to present any supportive cost justification" and rejected the clauses. *Id.*

b. *Opinion No. 80.* In March 1980 the Commission affirmed the ALJ's decision in part and remanded in part. With respect to the minimum billing demand clauses, the Commission summarily affirmed. *Kansas Gas & Electric Co.,* 10 FERC ¶ 61,243 (March 19, 1980).

c. *The Tenth Circuit skirmish.* In December 1980 KG & E filed a petition in the Tenth Circuit challenging FERC's disapproval of the minimum billing demand clauses. In April 1981 the Tenth Circuit responded to a FERC motion for a remand of the record by remanding the entire proceeding to FERC and directing it to "grant rehearing and clarification in further administrative proceedings." *Kansas Gas & Electric Co. v. FERC,* 10th Cir. No. 80–1709, April 15, 1981, *reproduced in* Joint Appendix (JA) at 38.

d. *Opinion No. 80–B.* On November 24, 1981 FERC reconsidered Docket No. ER 77–578. *Kansas Gas & Electric Co.,* 17 FERC ¶ 61,180 (November 24, 1981).[5] The Commission "reverse[d] the initial decision on the minimum billing demand

---

2. A "docket" in the FERC context represents a rate filing for a particular period of time.

3. The municipalities have some generating capacity and are thus "partial requirements" customers.

4. As KG & E explains, "Although stated differently in some of the contracts, the total effect of the minimum billing demand clauses is the establishment of the monthly billing demand for each customer as the amount of capacity ex-

pressed in the then current letter of intent which letter of intent is effective for a one-year period." Brief for petitioner at 3.

5. Docket No. ER 80–259, one of the dockets in the current proceeding, had been filed in the meantime and was also before the Commission in Opinion No. 80–B. The disposition of that docket, and related dockets, is discussed in text at 717–718 *infra.*

clause." *Id.* at 61,343. The Commission explained:

> [S]ubsequent to Opinion No. 80, the Commission recognized that the use of a 12 CP demand allocation method with a demand ratchet was not *per se* unreasonable and may be justified by the demonstration of benefits that outweigh the disadvantages * * *. * * * We are concerned that KG & E was not afforded an opportunity at the hearing to defend its minimum billing demand clauses nor to adduce evidence of outweighing benefits to either itself or its partial requirements customers [the municipalities]. * * * We will therefore defer a ruling on the merits of the clauses until the issue may be presented to us with an adequate record, and in light of our more recent opinions, in some subsequent rate proceeding. We will not consider the initial decision in this docket (or the Commission opinion summarily affirming it) as a controlling precedent on the issue.

*Id.* at 61,344. The Commission noted that, in the interim, the clauses would not be allowed. *Id.* All proceedings in Docket No. ER 77–578 were subsequently terminated.[6] The parties focused their energy on the current proceeding—Docket No. ER 80–259 and related dockets.

2. *The docket under review.*

a. *The ALJ opinion.* On August 12, 1982 an ALJ issued an opinion on various dockets regarding KG & E's rate proposals for its municipal customers.[7] In the course of ruling on various issues, he found that the cities bore the burden of proof in challenging KG & E's minimum billing demand clauses and that the cities had not satisfied that burden. *Kansas Gas & Electric Co.,* Initial Decision, 20 FERC ¶¶ 63,040, 65,183–65,185 (August 12, 1982), JA 105–108.

b. *The Commission opinion.* In October 1983 FERC issued Opinion No. 188, the opinion at issue in this petition. On the minimum billing demand issue the Commis-

sion held that the ALJ had incorrectly assigned the burden of proof and that KG & E had not satisfied its burden of justifying the ratchet-like clauses in combination with the 12–CP method:

> In Opinion No. 80–B * * * [a] ruling on the merits was deferred until evidence on the issue could be developed in some subsequent proceeding wherein KG & E would be afforded the opportunity to adduce evidence of any benefits to itself or its customers that outweigh the disadvantages that are the basis of the general rule * * *. KG & E failed to carry that burden in this proceeding. Accordingly, we reverse the initial decision and disallow the use of minimum billing demand clauses in KG & E's contracts with its municipal customers.

*Kansas Gas & Electric Co.,* 25 FERC ¶¶ 61,006, 61,045 (October 3, 1983), JA 133. The Commission also noted that it would "continue to defer ruling on the merits of KG & E's proposed clauses until after it has had another opportunity in some subsequent proceeding to justify * * * an exception to our general prohibition." *Id.* at 61,046, JA 134.

The Commission's disposition is somewhat confusing. As noted, the Commission stated that it would "continue to defer ruling on the merits." To the ordinary reader, this statement would suggest that the Commission had not yet finally decided the validity of the clauses in the proceeding before it. However, the Commission's meaning was apparently that, although it disallowed the use of the clauses for the docket before it, this disallowance would not affect future determinations of the clauses' validity. Although this court strongly disapproves of crediting an agency's *post hoc* explanations that seem to differ from the plain language of the agency opinion, the parties here vigorously agree that this interpretation was the clearly understood meaning of the Commission's

---

6. All parties agree that proceedings in the previous docket have been terminated. *See* FERC supplementation at 4; KG & E supplementation at 3; intervenors' supplementation at 4.

7. The time period for the clauses at issue in this proceeding is 1980–1982. *See* KG & E supplementation at 1–2.

statement. Since no party challenges this interpretation, we will reluctantly accept it.[8]

c. *The current petition.* KG & E filed a timely petition with this court. KG & E argues that the Commission should be reversed, and the disputed clauses reinstated, for two reasons: (1) the burden of proof should be on those seeking to upset the minimum billing demand clauses, and (2) even if the burden is on KG & E, the utility met that burden. FERC disputes both of these contentions. The cities are intervening on behalf of FERC.

## II. BURDEN OF PROOF

KG & E raises three arguments against FERC imposition of the burden of proof regarding use of minimum billing demand clauses in conjunction with a 12–CP method of demand cost allocation. The utility contends that it should not bear the burden (1) because the clauses are not within the statutory assignment of burden of proof, (2) because the clauses do not represent a departure from the status quo, and (3) because the clauses are contractual. We will address each argument in turn.

### A. *The Statutory Argument*

KG & E emphasizes that Section 205 of the Federal Power Act imposes the burden of proof on the utility for "a rate or charge sought to be increased." 16 U.S.C. § 824d(e). KG & E maintains, "On its face this language establishes the burden of proof on the utility *only* in those instances where the utility seeks to establish that a proposed increase is just and reasonable. It would seem to be plain from an ordinary reading of the statute that in other cases the utility would not have such burden of proof." Brief for petitioner at 20 (emphasis added).

KG & E relies on *American Louisiana Pipe Line Co. v. FPC,* 344 F.2d 525 (D.C. Cir.1965). Construing analogous provisions of the Natural Gas Act,[9] this court held that the pipeline company need not bear the burden of proof to justify changing its "cost of service" form to a "contract demand" form. The court explained, "If the change in rate is not an increase, the burden of proof is on the party attacking the filed tariff or the Commission if it attacks the tariff." *Id.* at 529. KG & E contends that its minimum billing demand clauses are not a rate increase and that the burden of proof should thus be on those challenging the clauses.

KG & E's argument is unavailing. *American Louisiana* does not control this appeal for two reasons. First, we have clarified that *American Louisiana* is properly understood as a rate decrease case and that "there is a basis for imposing different burdens of proof rules in justifying rate decreases." *Commonwealth of Puerto Rico v. FMC,* 468 F.2d 872, 879 n. 15 (D.C. Cir.1972). In a rate decrease "opponents are more likely to have access to the same general fund of information concerning the rate proposals and so will not be at a decisive disadvantage if they have to bear the burden of proof." *Id.* Although there is some dispute about whether the minimum billing demand clauses will themselves increase rates, there is no dispute that the clauses are filed as part of an increase, rather than a decrease. *Kansas Gas & Electric Co., supra,* 25 FERC at

8. We admonish the Commission, however, that the demands of reasoned decisionmaking require the Commission to express itself with sufficient clarity so that its decisions may be readily understood. If the Commission's ruling is final for the docket before it, the Commission should say so.

We note also that, if the Commission's decision were *not* final with respect to the particular docket period, there would be a serious question about the decision's finality, and reviewability. *See Public Service Co. of N.M. v. FPC,* 557 F.2d

227 (10th Cir.1977) (allocation of burden of proof is not sufficiently final to be reviewable). *See also Kansas Cities v. FERC,* 723 F.2d 82, 86 n. 3 (D.C.Cir.1983) (noting *Public Service* holding without deciding the issue); *City of Oglesby v. FERC,* 610 F.2d 897, 901 n. 20 (D.C.Cir.1979) (same).

9. Analogous provisions of the Natural Gas Act are helpful in interpreting the Federal Power Act. *FPC v. Sierra Pacific Power Co.,* 350 U.S. 348, 353, 76 S.Ct. 368, 371, 100 L.Ed. 388 (1956).

61,041, JA 126. Indeed, this court has previously treated the ratchet/12–CP combination as part of the utility's burden of proof when the utility sought the combination as part of a rate increase. *See Second Taxing District of City of Norwalk, supra,* 683 F.2d at 483. *Cf. Cities of Bethany, supra,* 727 F.2d at 1136 ("utility bore a burden to demonstrate that its proposed 3–CP method of allocating costs was reasonable").

Second, and more fundamentally, FERC has made a reasoned judgment that a specific combination of methods—a 12–CP cost demand allocation method and a demand ratchet—is usually unjust and unreasonable. *See Connecticut Light & Power Co., supra; Union Electric Co., supra; Central Illinois Light Co., supra.*[10] In *American Louisiana* the Commission's view of rate forms had not similarly crystallized. FERC's determination about the ratchet/12–CP combination thus represents the Commission's attempt to discharge its statutory duty and ensure that rates are "just and reasonable." Sections 205 and 206 of the Federal Power Act, 16 U.S.C. §§ 824d, 824e. The Commission has simply used its analysis of a specific combination to structure its inquiry into particular cases.

 Viewed in this light, the Commission's requirement that the utility justify the particular combination represents the specific application of the Commission's reasoned conclusion that this particular combination of methods tends to be unjust and unreasonable. KG & E's argument thus becomes an attack on central tenets of administrative law. For it is beyond dispute that an agency may apply its reasoned analysis of an issue to guide its disposition of individual cases. *FPC v. Texaco Inc.,*

377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964). And it is similarly beyond dispute that an agency may articulate its general policy in a particular proceeding, as in FERC's earlier decisions, rather than in a rulemaking. *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 290–295, 94 S.Ct. 1757, 1769–1772, 40 L.Ed.2d 134 (1974).

 The Commission's requirement that the utility justify its use of the combined methods is a particular application of the Commission's determination that the combination is generally unfair and inequitable—a determination fully within the Commission's mandate to determine the justness and reasonableness of the rates before it.

## B. *The Clauses and the Status Quo*

KG & E also argues that it should not bear the burden of proof because minimum billing demand clauses represent the status quo, and the party opposing the status quo has the burden of proof. KG & E thus seeks to rely on *Public Service Comm'n of New York v. FERC (Transco),* 642 F.2d 1335 (D.C.Cir.1980), *cert. denied,* 454 U.S. 879 and 880, 102 S.Ct. 360 and 362, 70 L.Ed.2d 189 (1981). In *Transco* the court held that FERC was wrong in forcing the utility to bear the burden of proof on the parts of its filing that did not represent a departure from the status quo. "[W]e cannot accept the proposition that because a company files for higher rates, it bears the burden of proof on those portions of its filing that represent no departure from the status quo. * * * Forcing the petitioning company to justify not only the novel portions of its petitions but the unchanged parts as well would seriously increase the burden upon these regulated companies

**10.** In *Second Taxing District of City of Norwalk, supra* note 1, this court concluded that FERC's opinions do not establish "a presumption against the combination of a ratchet with the 12–CP method of allocation." 683 F.2d at 488. We read this comment to establish only that FERC's determination about the acceptability of the proposed combination "must rest with the facts of the particular case." *Id.* Indeed, in affirming FERC's determination that the combi-

nation was acceptable in a particular case, the *Second Taxing District* court accepted the validity of FERC's general policy that the combination is acceptable only "where *a utility can show* that 'the ensuing disadvantages to consumers of an additionally imposed demand ratchet are outweighed by any benefits to be derived by the utility itself, or by the consuming public.'" *Id.* (*quoting Central Illinois Light Co., supra* note 1) (emphasis added).

without any corresponding increase in reasoned decisionmaking." *Id.* at 1345. Emphasizing that it has used minimum billing demand clauses with at least one of its municipal customers since 1961, KG & E claims that the Commission should thus bear the burden in challenging those clauses.

■ However, this case is readily distinguishable from *Transco*. In *Transco* the Commission had clearly approved the part of the rate representing the status quo in prior proceedings. *Id.* at 1342. In this case, in contrast, before the dispute in Docket ER 77–578 the Commission had not squarely addressed KG & E's ratchet/12–CP combination.[11] Furthermore, in *Transco* the record revealed no reasoning to support the Commission's view that the pre-existing clause was not part of a just and reasonable rate.[12] In this case we have the Commission's considered conclusion that this particular combination tends to operate in an unjust and unreasonable fashion, and that it will therefore be barred unless the utility can make specified showings. Thus in a *Transco* situation, where the Commission has previously approved the disputed practice and where the Commission lacks a reasoned determination about that practice, there is little discernible benefit in allowing the Commission to impose a burden of proof on the practice's proponent. In the circumstances of this case, however, where the Commission has not previously approved the disputed practice and where the Commission has reasonably found the practice to be unjust and unreasonable unless certain showings are made, the allocation of the burden on the practice's proponent is completely accepta-

ble. For the allocation in such a proceeding not only yields improvements in reasoned decisionmaking—the *Transco* concern—but also furthers FERC's ability to serve the public interest and determine whether rates are just and reasonable. *Cf. Cities of Batavia, supra,* 672 F.2d at 77 (*Transco* does not prevent a court from "reviewing a revised rate completely to assure that all its parts—old and new—operate in tandem to insure a 'just and reasonable' result").

### C. *The Clauses as Contractual Conditions*

■ KG & E also argues that the burden of proof should not be imposed on it because the minimum demand clauses are contractual. KG & E points to the *"Mobile-Sierra* doctrine" in which the Supreme Court said that FERC bears the burden of justifying its abrogation of contractual provisions. *See United Gas Pipeline Co. v. Mobile Gas Service Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); *FPC v. Sierra Pacific Power Co.,* 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). In addition to responding to this substantive argument, FERC emphasizes that KG & E did not make this argument in its application to the Commission for rehearing. FERC thus argues that KG & E should be barred from making the argument to this court.

The Federal Power Act requires that a reviewing court consider only those issues raised in an application for rehearing, unless the litigant can show "reasonable ground" for not having raised an issue. 16 U.S.C. § 825*l*(b). In this case KG & E has not even attempted to offer a reason for its

---

11. The record is ambiguous about the history of KG & E's use of the clauses in combination with a 12–CP method. But it is clear that the docket under review and the preceding docket represented the first proceedings in which FERC considered the combination at length.

12. In *Transco* the Commission did allude to a prior decision as justification for its decision. 642 F.2d at 1340–1341. But the court concluded that the allusion did not "provide a reasoned explanation for the departure." *Id.* at 1341. Unlike the FERC policy in this case, the refer-

ence in *Transco* to a single decision issued some 20 years earlier did not represent the application of a reasoned case-by-case policy evolution. Unlike the FERC policy in this case, the earlier decision in *Transco* did not focus on burden of proof. And, unlike the FERC policy in this case, the earlier decision in *Transco* antedated FERC's prior approval of the disputed provision. Thus the earlier FERC decision alluded to by the Commission in *Transco* was far from the reasoned analysis of ratchets and the 12–CP method evident in this case.

failure to raise the *Mobile-Sierra* argument in its petition to the Commission. We thus have no basis for considering an argument that the Commission did not have an opportunity to address within its regulatory process.

In conclusion, KG & E's arguments are insufficient to dislodge FERC's requirement that the utility justify the combination that the Commission has found to be generally unjust and unreasonable. The Commission has acted within its statutory authority to determine the propriety of rates, and the presence of these clauses in earlier rate arrangements does not insulate them from that determination.

### III. REASONED DECISIONMAKING

KG & E also claims that, even if it had the burden of proof, it satisfied that burden. KG & E thus contends that FERC's decision to reverse the ALJ does not reflect reasoned decisionmaking.

The Commission's findings of fact must be supported by "substantial evidence in the record." 16 U.S.C. § 825*l*. More generally, reasoned decisionmaking requires "a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–2867, 77 L.Ed.2d 443 (1983) (*quoting Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). We emphatically agree with KG & E that this responsibility is not diminished by the Commission's burden of proof allocation. As this court has stressed, assigning the burden of proof is not a magic wand that frees an agency from the responsibility of reasoned decisionmaking. "Whatever the allocation of the burden of proof, mere conjecture and abstract theorizing offered in a vacuum are inadequate to satisfy us that the agency has engaged in reasoned decisionmaking."

*Arizona Public Service Co. v. United States,* 742 F.2d 644, 649 n. 2 (D.C.Cir. 1984).

In this case, however, the Commission did more than offer mere conjecture and abstract theorizing. It reviewed the record in light of its conclusion that the combination of ratchets and the 12–CP method of demand cost allocation generally operates in an unfair and unreasonable manner. In doing so it made specific findings about KG-& E's combination of the ratchet-like clauses and the 12–CP method. *See* 25 FERC at 61,045, JA 133 (KG & E's "demand charges may be skewed upward or downward without any relationship to properly allocated costs"). The Commission also discussed and rejected the ALJ's findings about possible benefits from KG & E's clauses. *Id.* at 61,045–61,046, JA 133–134. FERC thus concluded that KG & E had failed to show that its ratchet/12–CP combination had sufficient benefits to overcome the usual problems associated with the combination. In contrast, in other cases where the utility has made such a showing the Commission has permitted the combination of ratchets and a 12–CP demand cost allocation method. *See Connecticut Light & Power Co., supra,* 14 FERC ¶ 61,139; *Union Electric Co., supra,* 12 FERC ¶ 61,580.[13]

■ In short, the evidence in the record supported FERC's conclusion that the utility had not sufficiently distinguished its combination of minimum demand clauses and the 12–CP method from the problems generally identified by the Commission.

### IV. CONCLUSION

FERC's determination that the minimum billing demand clauses should not be permitted for the specified period was a permissible exercise of reasoned regulatory discretion. FERC has made a considered judgment about the combination of ratch-

---

**13.** KG & E also argues that FERC has failed to distinguish decisions that permitted the 12–CP/ratchet combination for partial requirements customers. *See Cleveland Electric Illuminating Co.,* 25 FERC ¶ 63,047 (Nov. 30, 1983); *Minnesota Power & Light Co.,* 21 FERC ¶ 61,233 (Nov. 30, 1982). However, in those opinions FERC found only that, unlike KG & E in this proceeding, the utility had met its burden of proof. *Cf. Utah Power & Light Co.,* 14 FERC ¶ 61,162 (Feb. 23, 1981) (ratchet for partial requirements customers disallowed).

ets with KG & E's demand cost allocation method, and KG & E failed to distinguish its circumstances from the reach of that judgment.

*Affirmed.*